FILED 09 OCT '24 11:37 USDC-ORP

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:24-cr-00383-AN |
| v. | **INDICTMENT** |
| RAMIREZ DUMITRU,<br>GIOVANNI SPIREA,<br>SANTA-MADALINA COSTACHE aka<br>   Santa-Midalina Costache,<br>FLORIN MAREATA aka<br>   Florin Santos,<br>ANITA VADUVA,<br>ION PAUL MICLESCU,<br>NICOLAS BARBOSU,<br>ALBERTO TOMESCU,<br>OANA AURA CRISTINA CALDARARU,<br>ROBERTA ELENA SARDARU,<br>SALVIS FORO DUNCA,<br>ANA PATRICIA ESCALANTE,<br>JESSICA GONZALEZ,<br>EDWIN LIONEL SANTIZO-RALON,<br>CRISTINA YESENIA ESCALANTE aka<br>   Cristina Hernandez-Escalante,<br>EDGAR BASILIO HERNANDEZ, and<br>MARTA HERNANDEZ DE ESTRADA;<br><br>       Defendants. | 18 U.S.C. § 371<br>18 U.S.C. § 1029(a)(2)<br>18 U.S.C. § 1029(b)(1)<br>18 U.S.C. § 2314<br>18 U.S.C. § 2315<br>18 U.S.C. § 2<br><br>**<u>Forfeiture Allegations</u>**<br><br>**<u>UNDER SEAL</u>** |

## THE GRAND JURY CHARGES:

## INTRODUCTORY ALLEGATIONS:

1.    An "access device" was any card, plate, code, account number, electronic serial number, personal identification number, or other means of account access that could be used, alone or in conjunction with another access device, to obtain money, goods, or services.

Indictment                                                     **Page 1**

2.      An "unauthorized access device" was any access device that was lost, stolen, or obtained with intent to defraud.

3.      "Skimming" is a criminal activity where a device is installed on a point-of-sale payment terminal, ATM, or fuel pump to capture card information and personal identification number (PIN) entries.

4.      "Device-making equipment" was any equipment designed or primarily used for making an access device or counterfeit access device.

5.      The U.S. Department of Agriculture administers the Supplemental Nutrition Assistance Program (SNAP) through its Food and Nutrition Service (FNS).  SNAP is a federally funded assistance program designed to help low-income individuals and families purchase food. In Oregon, SNAP public assistance benefits are loaded to an account that a qualified recipient accesses by means of an access card, similar to a debit or credit card, called the Oregon Electronic Benefit Transfer (EBT) Card.  This is also called an Oregon Trail Card.  All states maintain SNAP programs that operate in a substantially similar manner.

6.      Each EBT card has a unique EBT number that in encoded on the card.  The recipient is also given a unique PIN as a security feature.  When the EBT card is swiped at a point-of-sale register, the user selects EBT (as opposed to credit or debit), enters the PIN and the funds are electronically debited from the recipient's account and credited to the retailer's account.

### Count 1
### (Conspiracy to Defraud the United States)
### (18 U.S.C. § 371)

7.      The Introductory Allegations of this Indictment are hereby incorporated by reference as if fully stated herein.

### OBJECTS OF THE CONSPIRACY

8.      Beginning on an unknown date, but no later than on or about August 7, 2023, and continuing to the present, within the District of Oregon and elsewhere, defendants **RAMIREZ DUMITRU (DUMITRU), GIOVANNI SPIREA (SPIREA), SANTA-MADALINA**

**Indictment**                                                                                                    **Page 2**

COSTACHE aka Santa-Midalina Costache (COSTACHE), **FLORIN MAREATA aka Florin Santos (MAREATA), ANITA VADUVA (VADUVA), ION PAUL MICLESCU (MICLESCU), NICOLAS BARBOSU (BARBOSU), ALBERTO TOMESCU (TOMESCU), OANA AURA CRISTINA CALDARARU (CALDARARU), ROBERTA ELENA SARDARU (SARDARU), SALVIS FORO DUNCA (DUNCA), ANA PATRICIA ESCALANTE (A. ESCALANTE), JESSICA GONZALEZ (GONZALEZ), EDWIN LIONEL SANTIZO-RALON (SANTIZO), CRISTINA YESENIA ESCALANTE aka Cristina Hernandez-Escalante (C. ESCALANTE), EDGAR BASILIO HERNANDEZ (HERNANDEZ)**, and **MARTA HERNANDEZ DE ESTRADA (DE ESTRADA)**, (collectively, **DEFENDANTS**) and others, known and unknown to the Grand Jury, knowingly combined, conspired, and agreed with each to commit the following offenses against the United States:

    a. Access Device Fraud, in violation of Title 18, United States Code, Sections 1029(a)(2) and (b)(1);

    b. Transportation of Stolen Goods, in violation of Title 18, United States Code, Section 2314; and

    c. Sale or Receipt of Stolen Goods, in violation of Title 18, United States Code, Section 2315.

<b>MANNER AND MEANS OF THE CONSPIRACY</b>

9. The objects of the conspiracy were carried out, in substance, as follows:

10. One or more of the **DEFENDANTS** possessed skimming devices and electronic media containing EBT numbers at a residence in Orange County, California.

11. One or more of the **DEFENDANTS** shared with each other and other co-conspirators, known and unknown to the Grand Jury, stolen EBT account information and PINs to unlawfully

**Indictment**                                                                    **Page 3**

obtain items like infant formula and energy drinks with SNAP benefits that did not belong to the **DEFENDANTS**.

12. One or more of the **DEFENDANTS** used stolen EBT account information and PINs to unlawfully obtain infant formula, energy drinks and other SNAP-eligible items at grocery stores in Oregon, Washington, and California through in-store purchases and on-line orders.

13. One or more of the **DEFENDANTS** rented vans and trucks to transport fraudulently obtained goods.

14. One or more of the **DEFENDANTS** rented storage units to package and store fraudulently obtained goods.

15. One or more of the **DEFENDANTS** collected infant formula, energy drinks and other SNAP-eligible items unlawfully obtained by their co-conspirators from residential addresses and storage units and transported the fraudulently obtained goods to a storage unit in Vancouver, Washington.

16. One or more of the **DEFENDANTS** and other co-conspirators known and unknown to the Grand Jury packaged unlawfully obtained infant formula, energy drinks and other SNAP-eligible goods at the Vancouver, Washington, storage unit for shipment to California.

17. One or more of the **DEFENDANTS** and other co-conspirators known and unknown to the Grand Jury arranged for the transportation of 124,390 pounds of unlawfully obtained infant formula, energy drinks and other SNAP-eligible goods by private vehicle and commercial carrier from the State of Oregon and the State of Washington to the State of California. The estimated value of the fraudulently obtained goods was in excess of $2.4 million dollars.

////

////

**Indictment**                                                                                                    **Page 4**

## OVERT ACTS

18.    In furtherance of the conspiracy and to accomplish its objects, **DEFENDANTS** and their co-conspirators known and unknown to the Grand Jury committed or caused to be committed the following overt acts, among others, within the District of Oregon and elsewhere:

19.    On or about August 18, 2023, defendant **GONZALEZ** rented a storage unit at 7601 NE 5th Avenue, Vancouver, Washington, to store fraudulently obtained goods.

20.    On or about September 26, 2023, defendant **A. ESCALANTE** rented a van to transport fraudulently obtained goods.

21.    On or about September 26, 2023, defendants **DUNCA, MAREATA, A. ESCALANTE** and **C. ESCALANTE** loaded fraudulently obtained goods into the rented van at Additional Self Storage, 401 NE Minnehaha Street, Vancouver, Washington.

22.    On or about February 11, 2024, defendant **GONZALEZ** rented a U-Haul truck to transport fraudulently obtained goods.

23.    On or about April 3, 2024, defendants **A. ESCALANTE** and **SANTIZO** met with an unindicted co-conspirator at 2805 East 25th Street, Vancouver, Washington, where they loaded fraudulently obtained goods into a white minivan.

24.    On or about April 3, 2024, defendants **A. ESCALANTE, DE ESTRADA,** and **SANTIZO** transported fraudulently obtained goods to their storage unit at 7601 NE 5th Avenue, Vancouver, Washington.

25.    On or about April 4, 2024, defendant **SANTIZO** signed a bill of lading to ship 3,900 pounds of fraudulently obtained goods from the storage unit in Vancouver, Washington, to California.

26.     On or about April 8, 2024, defendant **A. ESCALANTE** arranged for the shipment of 4,050 pounds of fraudulently obtained goods from the storage unit in Vancouver, Washington, to California.

27.     On or about May 9, 2024, defendants **GONZALEZ** and **C. ESCALANTE** flew from Ontario, California, to Portland, Oregon.

28.     On or about May 11, 2024, defendants **GONZALEZ** and **C. ESCALANTE** transported fraudulently obtained goods to their storage unit at 7601 NE 5th Avenue, Vancouver, Washington.

29.     On or about May 22, 2024, defendants **A. ESCALANTE, C. ESCALANTE,** and **DE ESTRADA** packaged boxes of fraudulently obtained goods for shipment to California at their Vancouver, Washington, storage unit.

30.     On or about May 23, 2024, defendants **A. ESCALANTE** and **SANTIZO** transported fraudulently obtained goods to their Vancouver, Washington, storage unit.

31.     On or about June 13, 2024, defendants **GONZALEZ** and **HERNANDEZ** packaged fraudulently obtained goods for shipment to California.

32.     On or about July 9, 2024, defendants **A. ESCALANTE, SANTIZO**, and **DE ESTRADA** packaged fraudulently obtained goods at the Vancouver storage unit for shipment to California.

33.     On or about August 6, 2024, defendants **MICLESCU, VADUVA**, and **BARBOSU** met with **DE ESTRADA** and **SANTIZO** at the Aspire Columbia Ridge Apartments, 15910 NE Sandy Boulevard, Portland, Oregon, where they loaded fraudulently obtained goods into **A. ESCALANTE'S** minivan for transport to their Vancouver, Washington, storage unit.

**Indictment**                                                                 **Page 6**

34.     On or about August 7, 2024, defendant **A. ESCALANTE** arranged for the shipment of 2,600 pounds of fraudulently obtained goods from the Vancouver, Washington, storage unit to California.

35.     On or about September 5, 2024, defendants **GONZALEZ** and **HERNANDEZ** met with **MICLESCU** and **BARBOSU** at the Aspire Columbia Ridge Apartments, 15910 NE Sandy Boulevard, Portland, Oregon, where they loaded fraudulently obtained goods into **A. ESCALANTE'S** minivan for transport to their Vancouver, Washington, storage unit.

36.     On or about September 6, 2024, **A. ESCALANTE** arranged for the shipment of 3,900 pounds of fraudulently obtained goods from the Vancouver, Washington, storage unit to California. **GONZALEZ** signed the bill of lading for the shipment.

37.     On September 18, 2023, defendant **DUMITRU** went to a Portland, Oregon, grocery store, where he used a card encoded with stolen EBT account information to spend approximately $520 on infant formula and other SNAP-eligible items.

38.     On December 7, 2023, defendant **DUMITRU** went to a Vancouver, Washington, grocery store, where he used a card encoded with stolen EBT account information to spend approximately $474 on infant formula and other SNAP-eligible items.

39.     On February 2, 2024, defendant **DUMITRU** went to a Portland, Oregon, grocery store where he used a card encoded with stolen EBT account information to spend approximately $284 on infant formula and other SNAP-eligible items.

40.     On or about May 24, 2024, defendant **DUMITRU** possessed skimming devices and electronic media containing stolen EBT account information. The EBT account information was used by defendants **DUMITRU, SPIREA, COSTACHE, VADUVA, MICLESCU** and others to

**Indictment**                                                                                                    **Page 7**

purchase infant formula and other SNAP-eligible items in Oregon, Washington and elsewhere in furtherance of the conspiracy.

41.     On March 2, 2024, defendant **SPIREA** went to a Portland, Oregon, grocery store where he used a card encoded with stolen EBT account information to spend approximately $299 on infant formula and other SNAP-eligible items.

42.     On June 4, 2024, defendant **SPIREA** went to a Portland, Oregon, grocery store where he used a card encoded with stolen EBT account information to spend approximately $286 on infant formula and other SNAP-eligible items.  He also obtained $81.89 in cash benefits from the same card.  Defendant **COSTACHE** used the same EBT information to illegally obtain infant formula and other SNAP-eligible items.

43.     On August 2, 2024, defendant **SPIREA** went to a Portland, Oregon, grocery store where he used a card encoded with stolen EBT account information to spend approximately $280 on infant formula and other SNAP-eligible items.  **COSTACHE** used the same EBT information to illegally obtain infant formula and other SNAP-eligible items.

44.     On March 2, 2024, defendant **COSTACHE** went to a Portland, Oregon, grocery store where she used two cards encoded with stolen EBT account information to spend approximately $268 on infant formula and other SNAP-eligible items.

45.     On April 3, 2024, defendant **COSTACHE** went to a Happy Valley, Oregon, grocery store where she used two cards encoded with stolen EBT account information to spend approximately $295 on infant formula and other SNAP-eligible items.

46.     On June 4, 2024, defendant **COSTACHE** went to the same Happy Valley, Oregon, grocery store where she used a card encoded with stolen EBT account information to spend

approximately $304 on infant formula and other SNAP-eligible items and to obtain $259 in cash benefits from the same EBT account.

47.     From June 1, 2023, to August 15, 2024, defendant **MAREATA** used stolen EBT account information to place more than 1,600 online orders for energy drinks, infant formula and other SNAP-eligible items from websites associated with grocery stores for curb-side delivery in Oregon, Washington, California, and Nevada.  The total value of these orders exceeds $374,000.

48.     In February 2024, defendant **MAREATA**, using a Facebook account under the alias Lucas Alin offered to sell energy drinks for $12 per case with a minimum order of 50 cases. Defendant **MAREATA** used the same Facebook account to offer for sale a 2008 Toyota Sienna he used to pick up his online orders.

49.     Defendant **MAREATA** was also active in purchasing goods with stolen EBT cards at grocery outlets in Oregon and Washington.  On May 3, 2024, defendant **MAREATA** went to a Portland, Oregon, grocery store where he used a card encoded with stolen EBT account information to spend approximately $478 on infant formula and other SNAP-eligible items.

50.     On May 4, 2024, defendant **MAREATA** went to a Vancouver, Washington, grocery store where he used a card encoded with stolen EBT account information to spend approximately $419 on infant formula and other SNAP-eligible items.

51.     On May 9, 2024, defendant **MAREATA** went to a Happy Valley, Oregon, grocery store where he used a card encoded with stolen EBT account information to spend approximately $510 on infant formula and other SNAP-eligible items.

52.     On April 5, 2024, defendant **VADUVA** went to a Hillsboro, Oregon, grocery store where she used two or more cards encoded with stolen EBT account information to spend approximately $855.70 on infant formula and other SNAP-eligible items.

**Indictment**                                                                                     **Page 9**

53.     On May 8, 2024, defendant **VADUVA** went to a Vancouver, Washington, grocery store where she used two or more cards encoded with stolen EBT account information to spend approximately $1,025 on infant formula and other SNAP-eligible items.  During the same transaction defendant **VADUVA** attempted to use additional cards encoded with stolen EBT account information.  The transactions were declined because the cards had already been depleted.

54.     On May 4, 2024, defendant **MICLESCU** and an unidentified female co-conspirator went to a Canby, Oregon, grocery store where they used two or more cards encoded with stolen EBT account information to spend approximately $860 on infant formula and other SNAP-eligible items.

55.     On May 6, 2024, defendant **MICLESCU** and the same an unidentified female co-conspirator went to a Vancouver, Washington, grocery store where they used two or more cards encoded with stolen EBT account information to spend approximately $1,519 on infant formula and other SNAP-eligible items.

56.     On July 30, 2024, defendants **MICLESCU** and **BARBOSU** went to a Portland, Oregon, grocery store where they used two or more cards encoded with stolen EBT account information to spend approximately $1,709 on infant formula and other SNAP-eligible items.

57.     On July 30, 2024, defendants **BARBOSU** and **MICLESCU** went to a Portland, Oregon, grocery store where they used two or more cards encoded with stolen EBT account information to spend approximately $866 on infant formula and other SNAP-eligible items.

58.     On July 30, 2024, defendants **BARBOSU** and **MICLESCU** went to yet another Portland, Oregon, grocery store, their fourth store that day, where they used two or more cards encoded with stolen EBT account information to spend approximately $1,079 on infant formula and other SNAP-eligible items.

**Indictment**                                                                                          **Page 10**

59.     On April 2, 2024, defendant **TOMESCU** went to a Vancouver, Washington, grocery store where he used a card encoded with stolen EBT account information to spend approximately $372 on infant formula and other SNAP-eligible items.

60.     On April 3, 2024, defendant **TOMESCU** went to a Portland, Oregon, grocery store where he used a card encoded with stolen EBT account information to spend approximately $198 on infant formula and other SNAP-eligible items.

61.     On April 3, 2024, defendant **TOMESCU** went to a Portland, Oregon, grocery store where he used a card encoded with stolen EBT account information to spend approximately $489 on infant formula and other SNAP-eligible items.

62.     On April 3, 2024, defendant **CALDARARU** went to a Portland, Oregon, grocery store where she used a card encoded with stolen EBT account information to spend approximately $206 on infant formula and other SNAP-eligible items. Defendant **TOMESCU** has also used the same card.

63.     On April 3, 2024, defendant **CALDARARU** went to a Portland, Oregon, grocery store where she used a card encoded with stolen EBT account information to spend approximately $246 on infant formula and other SNAP-eligible items.

64.     On April 3, 2024, defendant **CALDARARU** went to a Portland, Oregon, grocery store where she used a card encoded with stolen EBT account information to spend approximately $265 on infant formula and other SNAP-eligible items. Defendant **CALDARARU** visited six Oregon grocery stores on April 3, 2024, and used cards encoded with stolen EBT account information to spend approximately $1,597 on infant formula and other SNAP-eligible items.

**Indictment**                                                                                          **Page 11**

65.     On January 5, 2024, defendant **SARDARU** went to a Vancouver, Washington, grocery store where she used a card encoded with stolen EBT account information to spend approximately $708 on infant formula and other SNAP-eligible items.

66.     On February 1, 2024, defendant **SARDARU** went to a Happy Valley, Oregon, grocery store where she used two or more cards encoded with stolen EBT account information to spend approximately $765 on infant formula and other SNAP-eligible items.

67.     On August 9, 2024, defendant **SARDARU** went to a Beaverton, Oregon, grocery store where she used a card encoded with stolen EBT account information to spend approximately $566 on infant formula and other SNAP-eligible items.

68.     On January 7, 2024, defendant **DUNCA** went to a Clackamas, Oregon, grocery store where he used a card encoded with stolen EBT account information to spend approximately $285 on infant formula and other SNAP-eligible items.

69.     On January 9, 2024, defendant **DUNCA** went to a Tualatin, Oregon, grocery store where he used two or more cards encoded with stolen EBT account information to spend approximately $381 on infant formula and other SNAP-eligible items.

All in violation of Title 18, United States Code, Sections 371, 1029(a)(2), 2314 and 2315.

### Counts 2 to 13
### Unauthorized Use of Access Devices
### (18 U.S.C. § 1029(a)(2))

70.     On or about the following dates, within the District of Oregon, and elsewhere, defendants, as specified below, in transactions affecting interstate and foreign commerce, knowingly and with intent to defraud, used unauthorized access devices, specifically stolen EBT account information and PINs as specified below, as defined in Title 18, United States Code,

Section 1029(e)(1) and (3), and by such conduct, during the approximate time periods specified below, obtained things of value, their value together totaling $1,000 or more:

| Count | | Defendant | Date Range | Approximate Number of Transactions | Amount |
|---|---|---|---|---|---|
| 2 | | **DUMITRU** | 8/7/2023 to 3/14/2024 | 240 | $46,483 |
| 3 | | **SPIREA** | 12/1/2023 to 8/22/2024 | 370 | $55,494 |
| 4 | | **COSTACHE** | 12/1/2023 to 8/22/2024 | 200 | $36,174 |
| 5 | | **MAREATA** | 6/1/2023 to 8/15/2024 | 1,600 | $374,000 |
| 6 | | **MAREATA** | 4/15/2024 to 9/2/2024 | 57 | $20,098 |
| 7 | | **VADUVA** | 4/4/2024 to 9/9/2024 | 125 | $36,711 |
| 8 | | **MICLESCU** | 4/3/2024 to 9/13/2024 | 510 | $142,506 |
| 9 | | **BARBOSU** | 6/11/2024 to 9/13/2024 | 375 | $102,107 |
| 10 | | **TOMESCU** | 3/10/2024 to 9/13/2024 | 60 | $15,797 |
| 11 | | **CALDARARU** | 3/7/2024 to 4/9/2024 | 65 | $15,154 |
| 12 | | **SARDARU** | 1/3/2024 to 9/14/2024 | 110 | $29,353 |
| 13 | | **DUNCA** | 12/1/2023 to 2/2/2024 | 95 | $20,886 |

All in violation of Title 18, United States Code, Section 1029(a)(2).

**Count 14**
**Interstate Transportation of Stolen Goods**
**(18 U.S.C. §§ 2314 and 2)**

71.    On or about May 22, 2024, in the District of Oregon and elsewhere, defendants **A. ESCALANTE, C. ESCALANTE** and **DE ESTRADA** did unlawfully transport, transmit, and transfer in interstate commerce from Vancouver, Washington, through Oregon, to San Pedro, California, fraudulently obtained goods and merchandise, that is, infant formula, of the value of

**Indictment**                                                                              **Page 13**

$5,000 or more, knowing the same to have been stolen, converted, and taken by fraud, in violation of Title 18, United States Code, Section 2314.

## Count 15
### Interstate Transportation of Stolen Goods
### (18 U.S.C. §§ 2314 and 2)

On or about July 9, 2024, in the District of Oregon and elsewhere, defendants **A. ESCALANTE, SANTIZO**, and **DE ESTRADA** did unlawfully transport, transmit, and transfer in interstate commerce from Vancouver, Washington, through Oregon, to San Pedro, California, fraudulently obtained goods and merchandise, that is, infant formula, of the value of $5,000 or more, knowing the same to have been stolen, converted, and taken by fraud, in violation of Title 18, United States Code, Section 2314.

## Count 16
### Interstate Transportation of Stolen Goods
### (18 U.S.C. §§ 2314 and 2)

From on or about September 5, 2024 to September 6, 2024, in the District of Oregon, defendants **GONZALEZ, HERNANDEZ** and **SANTIZO** did unlawfully transport, transmit, and transfer in interstate commerce from Vancouver, Washington, through Oregon, to San Pedro, California, fraudulently obtained goods and merchandise, that is infant formula, of the value of $5,000 or more, knowing the same to have been stolen, converted, and taken by fraud, in violation of Title 18, United States Code, Section 2314.

## FIRST FORFEITURE ALLEGATION

Upon conviction of one or more of the offenses alleged in Count 1 (Conspiracy) of this Indictment, defendants **DUMITRU, SPIREA, COSTACHE, MAREATA, VADUVA, MICLESCU, BARBOSU, TOMESCU, CALDARARU, SARDARU, DUNCA, A. ESCALANTE, GONZALEZ, SANTIZO, C. ESCALANTE, HERNANDEZ**, and **DE**

**Indictment**                                                                 **Page 14**

**ESTRADA** shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, including but not limited to a sum of money equal to the amount of proceeds obtained as a result of the offense in the form of a money judgment.

## SECOND FORFEITURE ALLEGATION

Upon conviction of one or more of the offenses alleged in Counts 2 to 13 (Unauthorized Use of Access Devices) of this Indictment, defendants **DUMITRU, SPIREA, COSTACHE, MAREATA, VADUVA, MICLESCU, BARBOSU, TOMESCU, CALDARARU, SARDARU,** and **DUNCA** shall forfeit to the United States, pursuant to 18 U.S.C. § 1029(c)(1)(C), any personal property used or intended to be used to commit the offense, and, pursuant to 18 U.S.C. § 982(a)(2)(B), any property constituting, or derived from, proceeds the defendants obtained directly or indirectly, as the result of the offense, including but not limited to a sum of money equal to the amount of proceeds obtained as a result of the offense in the form of a money judgment.

## THIRD FORFEITURE ALLEGATION

Upon conviction of one or more of the offenses alleged in Counts 14 to 16 (Transportation of Stolen Goods) of this Indictment, defendants **A. ESCALANTE, GONZALEZ, SANTIZO, C. ESCALANTE, HERNANDEZ**, and **DE ESTRADA** shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, including but not limited to a sum of money equal to the amount of proceeds obtained as a result of the offense in the form of a money judgment.

/ / / /

/ / / /

Indictment                                                                                    **Page 15**

If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

> (a) cannot be located upon the exercise of due diligence;
>
> (b) has been transferred or sold to, or deposited with, a third party;
>
> (c) has been placed beyond the jurisdiction of the court;
>
> (d) has been substantially diminished in value; or
>
> (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of defendants up to the value of the forfeitable property described in these forfeiture allegations.

Dated:  October __9__ , 2024.

A TRUE BILL.

OFFICIATING FOREPERSON

Presented by:

NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon

GEOFFREY A. BARROW
Assistant United States Attorney

**Indictment**                                                                 **Page 16**